1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATE DISTRICT COURT

11

SOUTHERN DISTRICT OF CALIFORNIA

12
13
14

| | |
|---|---|
| | Case No. 15cv1044 WQH PCL |
| **Tony Roberts**, | |
| Plaintiff, | **REPORT AND RECOMMENDATION GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **J. Beard et al.**, | |
| Defendants. | |

15
16
17
18
19
20

I.     INTRODUCTION

21
22         Plaintiff Tony Roberts, an inmate currently incarcerated at California Health

23  Care Facility, has filed a 42 U.S.C. § 1983 lawsuit against staff at the RJ Donovan

24  Correctional Facility for violations of his First Amendment right to file grievances

25
     and his Eighth Amendment right to be free from cruel and unusual punishment.
26
27  (Doc. 1, at 3-4.) Plaintiff alleges that Defendants R. Davis, A. Buenrostro, C. Meza,
28

1

A. Parker, R. Solis, R. Santiago, L. Ciborowski, D. Arguilez, S. Sanchez, K. Seibel, and Warden D. Paramo all retaliated against him for engaging in First Amendment conduct, and that Defendant Buenrostro sexually assaulted him during a pat-down search in violation of the Eighth Amendment. (Doc. 1, at 11-12.) Defendants have filed a motion for summary judgment on the following grounds: 1) Plaintiff failed to exhaust his administrative remedies as to all claims except the First Amendment retaliation claim against Defendant Buenrostro; 2) the undisputed evidence shows that Defendants did not retaliate against Plaintiff; and 3) the evidence shows that Defendant Buenrostro did not violate his Eighth Amendment rights or violate California law. For the following reasons, the Court recommends granting in part and denying in part Defendants' motion for summary judgment.

II.    ALLEGATIONS

Plaintiff alleges that "Defendants conspired to retaliate against [him] for engaging in 'protected conduct' when [he] petitioned for redress of his grievances." (Doc. 1, at 19.) Plaintiff alleges that Defendants Davis and Buenrostro "engaged in a series of unlawful and repressive conduct against Plaintiff and other mentally ill inmates" when Plaintiff "attempted to access [RJ Donovan's] inmate appeal procedure to complain about these Defendants' conduct" which "were either screened out or were never responded to by [RJ Donvan's] prison officials." (Doc. 1, at 10.) Plaintiff states that after he wrote the "class monitors" of the California Department of Corrections and Rehabilitation's mental health delivery system,

2

appointed under <u>Coleman v. Brown et al.</u>, 28 F. Supp. 3d 1068 (E.D. Cal. April 10, 2014), Plaintiff was retaliated against and terrorized by Defendants A. Buenrostro, R. Davis, C. Meza, A. Parker, R. Solis, R. Santiago D. Arguilez, S. Sanchez, L. Ciborowski, K. Seibel, D. Paramo, and Warden J. Beard for engaging in First Amendment conduct. (Doc. 1, at 10-11.)

Plaintiff claims that Defendants C. Meza and A. Buenrostro prohibited Plaintiff's ability to send written communications of public interest to government officials. (Doc. 1, at 19.) Plaintiff states that Defendant C. Meza "illegal[ly] obtained a copy of a written complaint Plaintiff had drafted and submitted" to the Department of Justice and gave the complaint to Defendant Buenrostro, who then concocted false allegations against Plaintiff in retaliation and arranged with other officers Plaintiff's transfer to another prison that caused Plaintiff "to experience an exacerbation in his mental illness." (Doc. 1, at 12.) Plaintiff claims that Defendants A. Parker and A. Buenrostro conducted a cell search and confiscated legal documents from Plaintiff including a civil rights complaint that was about to be filed. (Doc. 1, at 20.) Plaintiff claims that Defendants Davis, Meza, and Buenrostro falsely labeled Plaintiff a "snitch," causing him to be attacked by other inmates, in retaliation for exercising his First Amendment rights. (Doc. 1, at 21-24.) Plaintiff claims that Defendant K. Seibel, the deputy chief warden, conspired to retaliate against Plaintiff for filing grievances by authorizing the illegal activities of the

3

other correctional officers under her and by placing him on a list for transfer to another CDCR facility. (Doc. 1, at 14-15, 23.)

Finally, Plaintiff alleges that Defendant Buenrostro conducted a clothed body search of Plaintiff on April 2, 2014 and intentionally rubbed Plaintiff's private parts for sexual gratification in retaliation for exercising his First Amendment rights. (Doc. 1, at 11-12.) Plaintiff also accuses Buenrostro of sexual assault and battery in violation of California law and his Eighth Amendment's rights. (Doc. 1, at 21-23, 28.) Plaintiff alleges that on that same day, Buenrostro wrote up a false and retaliatory rules violation report against him for exercising his constitutional rights. (Doc. 1, at 11.)

III.   EVIDENCE PRESENTED

**A. Defendants' Proffer**

Plaintiff has filed administrative appeals as far back as 1989, and submitted appeals at RJ Donovan every year between 2001 and 2007, before submitting more appeals at RJ Donovan when he was transferred back there in 2014. (Doc. 116, Exhibit B.) Plaintiff has submitted administrative appeals for third-level review since 2005, and submitted approximately nine administrative appeals for third-level review between 2005 and 2014. (Decl. M. Voong, ¶ 10 and Doc. 116, Exhibit A.) In 2014, the year in which all of the events in this lawsuit are alleged to have occurred, Plaintiff properly submitted only two administrative appeals. (Doc. 116, Exhibit A.) In one of them, Log No. RJD-14-1803, Plaintiff appealed the rules

4

violation report authored by Officer Buenrostro on April 2, 2014, and the guilty finding made against him on May 1, 2014, based on that report. (Doc. 116, Exhibit A.) When Plaintiff originally submitted the appeal, Officer Buenrostro was the only Defendant named in it. (Doc. 116, Exhibit A.) The subject matter of this administrative appeal was limited to the rules violation report authored by Officer Buenrostro and the guilty finding made against Plaintiff. (Doc. 116, Exhibit A.) Plaintiff's contention was that Officer Buenrostro filed a "false" rules violation report against him in retaliation for prior grievances. (Doc. 116, Exhibit A.) The administrative appeal did not contain any allegations that Officer Buenrostro improperly searched Plaintiff, intentionally rubbed Plaintiff's private parts for sexual gratification, or any of the other allegations made against Officer Buenrostro in this lawsuit. (Doc. 116, Exhibit A.) After prison officials at RJ Donovan conducted the second-level review of appeal Log No. RJD-14-1803, Plaintiff completed Section F, requesting third-level review. (Decl. B. Self, ¶ 11.) Plaintiff attempted to name other Defendants in this lawsuit, including Captain Sanchez and Associate Warden Siebel, and to add new allegations. (Decl. B. Self, ¶ 11.) Under California regulations, prisoners cannot expand the scope of the appeal and add new issues or individuals after it is originally submitted. (Decl. B. Self, ¶ 11.) Plaintiff did not properly submit any other administrative appeals naming Defendants in 2014. (Decl. B. Self, ¶ 12.) Plaintiff submitted approximately seven other administrative appeals at RJ Donovan in 2014 that were screened out or cancelled

5

for various reasons. (Decl. B. Self, ¶ 14.) In most cases, those appeals were screened out because Plaintiff attempted to include multiple issues in the same appeal, because he failed to provide specific names or dates, or because he failed to use the CDCR-22 "Request for Interview" form, where appropriate. (Decl. B. Self ¶ 14.) In each case, the appeals office issued Plaintiff a screen-out letter explaining to him how he could properly resubmit the appeals. (Decl. B. Self, ¶ 14.) The only administrative appeal that Plaintiff submitted to the Office of Appeals for third-level review in 2014 was Institutional Log No. RJD-14-1803, the one concerning the rules violation report issued by Officer Buenrostro on April 2, 2014. (Decl. M. Voong, ¶ 9.)

Defendant Buenrostro declared that he did not take any adverse action against Plaintiff because Plaintiff corresponded with the "class monitors" of CDCR's mental health delivery system, appointed under <u>Coleman v. Brown et al.</u>, or for any other reason. (Buenrostro Decl. ¶ 2.) Defendant Buenrostro stated that he never refused to process Plaintiff's outgoing mail and that he never interfered with Plaintiff's outgoing or incoming mail. (Buenrostro Decl. ¶ 3.) Defendant Buenrostro was monitoring the inmates in Housing Unit A-1 on April 2, 2014. (Buenrostro Decl. ¶ 3.) Defendant Buenrostro ordered Plainitff to leave the housing unit and go to the dining hall for breakfast or return to his cell, but he stated that Plaintiff ignored his orders. (Buenrostro Decl. ¶ 3.) Defendant Buenrostro approached Plaintiff and again ordered Plaintiff to leave the housing unit or return

6

to his cell and Plaintiff responded, "Don't worry about what I'm doing, stupid Mexican." (Buenrostro Decl. ¶ 3.) Defendant Buenrostro stated that he searched Plaintiff because Plaintiff's actions were suspicious and unusual. (Buenrostro Decl. ¶ 4.) Defendant Buenrostro told Plaintiff that Plaintiff is expected to follow orders and procedures within the housing unit. (Buenrostro Decl. ¶ 4.) Plaintiff was agitated and angry and responded "Fuck you stupid Mexican. I'm going to do what I want to do." (Buenrostro Decl. ¶ 4.) Defendant Buenrostro placed Plaintiff in handcuffs because of Plaintiff's unusual behavior and agitated state, and as a safety precaution, Plaintiff was escorted to the Program Support Unit. (Buenrostro Decl. ¶ 4.) Defendant Buenrostro declared that he did not use excessive or improper force on Plaintiff at any time during the incident and clothed body search on April 2, 2014. (Buenrostro Decl. ¶ 5.) Defendant Buenrostro stated that he did not sexually assault Plaintiff during that search and did not rub Plaintiff's private parts for sexual gratification. (Buenrostro Decl. ¶ 5.) Defendant Buenrostro searched Plaintiff because his actions were suspicious, and Defendant Buenrostro knew that Plaintiff was not assigned to cell 210. (Buenrostro Decl. ¶ 5.) Defendant Buenrostro also knew, based on his training, education, and personal experience within CDCR, that inmates often try to go to other cells for improper purposes such as delivering or obtaining contraband including drugs, weapons, currency, or electronic equipment or other property that is not theirs. (Buenrostro Decl. ¶ 5.) This, and Plaintiff's agitated state, were the only reasons why Defendant Buenrostro

7

performed a clothed body search of Plaintiff. (Buenrostro Decl. ¶ 5.) Defendant Buenrostro wrote a 115 Rules Violation Report charging Plaintiff with behavior that leads to violence in violation of California Code of Regulations, Title 15, section 3005(d). (Buenrostro Decl. ¶ 6 and Exhibit A.) Defendant Buenrostro stated that he did not write this report in retaliation. (Buenrostro Decl. ¶ 6 and Exhibit A.) This Rules Violation Report was heard by a senior hearing officer, Correctional Lieutenant R. Davis, on May 1, 2014. (Buenrostro Decl. ¶ 6 and Exhibit A thereto.) Lt. Davis found Plaintiff not guilty of behavior that leads to violence, but instead found him guilty of the lesser included offense of openly displaying disrespect in violation of California Code of Regulations, Title 15, section 3004 (b). Lt. Davis's finding was based upon a preponderance of the evidence submitted at the hearing. (Buenrostro Decl. ¶ 6 and Exhibit A.) This evidence included Defendant Buenrostro's written report which stated in part that Plaintiff said "don't worry about what I'm doing stupid Mexican," and the testimony of Correctional Counselor Hailey, who told Lt. Davis that he heard Plaintiff call Defendant Buenrostro "a Mexican." (Buenrostro Decl. ¶ 6 and Exhibit A.) Plaintiff was assessed thirty days forfeiture of good-time credits, thirty days loss of evening yard privileges, and thirty day loss of dayroom privileges. (Buenrostro Decl. ¶ 6 and Exhibit A.) This 115 Rules Violation Report's guilty finding has not been overturned by the CDCR. (Buenrostro Decl. ¶ 6 and Exhibit A.)

Defendant Buenrostro never contacted Sergeant Sanchez to plot Plaintiff's transfer to another prison, knowing that doing so would exacerbate Plaintiff's mental illness. (Buenrostro Decl. ¶ 8.) Defendant Buenrostro did not have authority to have an inmate transferred, and he had no influence over the decision to transfer an inmate. (Buenrostro Decl. ¶ 8.) Defendant Buenrostro has never sat on any of Plaintiff's classification committees, nor has he ever acted as a Classification Staff Representative reviewing any action concerning Plaintiff. (Buenrostro Decl. ¶ 10.)

Defendants Buenrostro and Parker did not confiscate a civil rights lawsuit during a search of Plaintiff's cell on June 3, 2014. (Buenrostro Decl. ¶ 11; Parker Decl. ¶ 2.) Defendants Buenrostro and Parker did not "concoct" false disciplinary charges against Plaintiff. (Buenrostro Decl. ¶ 12; Parker Decl. ¶ 6.) Defendants Buenrostro and Parker were working as the Floor Officers in Housing Unit A-1 at RJ Donovan on June 3, 2014. (Buenrostro Decl. ¶ 13; Parker Decl. ¶ 2.) Defendants Buenrostro and Parker randomly chose to search Plaintiff's cell that day. (Buenrostro ¶¶ 13, 15; Parker Decl ¶ 2, 4.) Defendant Parker discovered a small, clear plastic bag lying on the lower-bunk mattress underneath a blue, state-issued jacket. (Buenrostro Decl. ¶ 13; Parker Decl. ¶ 2.) The bag was filled with tobacco. (Buenrostro Decl. ¶ 13; Parker Decl. ¶ 2.) The lower bunk was assigned to Plaintiff at that time. (Buenrostro Decl. ¶ 13; Parker Decl. ¶ 2.) Defendant Parker took possession of the tobacco and disposed of it per institutional procedures. (Buenrostro Decl. ¶ 13; Parker Decl. ¶ 2.) Defendant Parker did not "plant" the bag

9

of tobacco on Plaintiff's bunk. (Parker Decl. ¶ 4.) Defendant Parker wrote a 115

Rules Violation Report charging Plaintiff with possession of contraband (tobacco)

in violation of California Code of Regulations, Title 15, section 3006. (Buenrostro

Decl. ¶ 14; Parker Decl. ¶ 3 and Exhibit A.) This Rules Violation Report was heard

by a senior hearing officer, Correctional Lieutenant R. Davis, on July 2, 2014.

(Buenrostro Decl. ¶ 14; Parker Decl. ¶ 3 and Exhibit A.) Lt. Davis ultimately found

Plaintiff not guilty of this charge and dismissed the rules violation report because of

insufficient evidence. (Buenrostro Decl. ¶ 14; Parker Decl. ¶ 3 and Exhibit A.)

Defendants Buenrostro and Parker did not search Plaintiff's cell in retaliation for

any protected conduct that Plaintiff may have engaged in, or for any other improper

reason. (Buenrostro Decl. ¶ 15; Parker Decl. ¶ 4.) Defendants Buenrostro and

Parker searched Plaintiff's cell because they were required to perform three to five

random cell searches during their shifts as floor officers. (Buenrostro Decl. ¶ 15;

Parker Decl. ¶ 4.) Defendant Parker did not conspire with Buenrostro, or any other

correctional staff member or inmate, to file false disciplinary charges against

Plaintiff, and no one ever asked or suggested that Parker do so. (Parker Decl. ¶ 6.)

Defendant Buenrostro neither manufactured any charges against Plaintiff at

any time, nor has he asked or pressured others to do so. (Buenrostro Decl. ¶ 20.)

Defendant Buenrostro has never taken any adverse action against Plaintiff that was

not based upon a legitimate, penological reason. (Buenrostro ¶ 20.) Defendant

Buenrostro never told Plaintiff that he would "get some payback" and never

10

attempted to set up Plaintiff to be injured by other inmates. (Buenrostro Decl. ¶ 22.)

Defendant Buenrostro is not aware of any report or instance where Plaintiff was

attacked by other inmates from April through October 2014, and he is not aware of

any reports evidencing such an attack. (Buenrostro Decl. ¶ 22.) Defendant

Buenrostro has never threatened Plaintiff or bribed or caused another inmate to

assault, attack or hurt Plaintiff. (Buenrostro Decl. ¶ 22-24.) Defendant Buenrostro

has never called Plaintiff a snitch or child molester at any time. (Buenrostro ¶ 21.)

In addition to creating a threat of harm to the inmate and a security risk to the

institution, Defendants would have faced severe disciplinary action from their

supervisors and the prison administration had they called any inmate a "snitch" or a

"child molester." (Buenrostro ¶ 21.)

Defendant Seibel reviewed Plaintiff's transfer data on CDCR's Strategic

Offender Management System (SOMS). (Seibel Decl. ¶ 5.) SOMS contains data on

each CDCR inmate's case factors. (Seibel Decl. ¶ 5.) The information in SOMS

shows that Plaintiff was not placed on a transfer list in September and October 2014

to be sent out of RJ Donovan. (Seibel Decl. ¶ 6.) Defendant Seibel does not have

unilateral authority to place an inmate on a transfer list. (Seibel Decl. ¶ 6.)

Plaintiff's records showed that RJ Donovan reviewed his case on February 18,

2014. (Seibel Decl. ¶ 8.) Plaintiff's case was referred to the CSR with a

recommendation that Plaintiff be retained at RJ Donovan. (Seibel Decl. ¶ 8 and

Exhibit A.) The CSR endorsed the UCC's recommendation on March 26, 2014, and

11

Plaintiff remained at RJ Donovan. (Seibel Decl. ¶ 8 and Exhibit B thereto.) This ruling was upheld at Plaintiff's next UCC hearing on September 12, 2014. (Seibel Decl. ¶ 9 and Exhibit C.) Defendant Seibel never had any knowledge that others were planning to retaliate, or were retaliating, against Plaintiff at any time. (Seibel Decl. ¶ 10.)

**B. Plaintiff's Proffer**

On April 2, 2014, Plaintiff placed a CDCR Inmate Appeal 602 dated April 2, 2014 in Housing Unit #1 Appeals box, alleging sexual assault by Correctional Officer A. Buenrostro. (Roberts Decl., Doc. 119, at 26.) Plaintiff declared that he never received a response from any prison official regarding the appeal. (Id.)

On June 23, 2014, Plaintiff placed a CDCR 602 Appeal dated June 19, 2014 concerning senior CDCR administrators' intentional failure to control Officers D. Arguilez, A. Buenrostro, and R. Davis. (Doc. 119, at 27.) Plaintiff declared that he never received a response addressing the appeal. (Id.)

On July 8, 2014, Plaintiff gave Officer L. Ciborowski an appeal dated June 28, 2014, alleging an ongoing conspiracy to retaliate against him. (Id.) Plaintiff also submitted a CDCR Form 22 Inmate Request for Interview to Officer Ciborowski, who accepted it and signed it. (Id.) However, Plaintiff never received a response to the appeal. (Id.) Plaintiff stated that the administrative appeal submitted to Sergeant Ciborowski on July 8, 2014 included sufficient detail to provide enough information to allow prison officials to take appropriate responsive measures. (Doc.

12

119, at 15.) Plaintiff declared that it has been his personal experience that RJ Donovan fails to operate an Inmate Appeal system that conforms to state law and places unreasonable restrictions on inmates' ability to submit 602 appeals. (Roberts Decl. ¶ 16; Doc. 119, at 31.) Plaintiff stated that he believes that his appeals either vanished or were unlawfully rejected. (Roberts Decl. ¶ 17, 23; Doc. 119, at 31-33.)

Plaintiff declared that Officer A. Buenrostro engaged in unlawful and repressive conduct against him as he attempted to access RJ Donvan's inmate appeal procedure to complain about the Defendants' conduct. (Doc. 119, at 33.) Plaintiff stated that Defendant A. Buenrostro refused to process as outgoing mail a Coleman letter to class monitors on March 6, 2014. (Doc. 119, at 34.) Plaintiff then concluded that as a result of his filing 602 appeals and other complaints, he was retaliated against by Defendant Buenrostro, including a sexual assault of his male organ during a pat down search. (Doc. 119, at 35.) Plaintiff stated that Defendant Buenrostro issued him a false 115 Rules Violation Report for behavior that leads to violence arising out of the April 2, 2014 incident. (Doc. 119, at 36.) Plaintiff declared that Defendant Buenrostro falsely accused him of having contraband during the search of his cell on June 3, 2014, an accusation for which he was found not guilty. (Doc. 119, at 38.) Finally, Plaintiff declared that Defendant Buenrostro told inmate Gerald Marshall that Plaintiff was a "snitch," and that he told inmate Curtis Rusher that Plaintiff was a "child molester." (Doc. 119, at 41.)

13

Plaintiff submitted a 602 appeal on April 2, 2015 documenting that Defendant Buenrostro threatened Plaintiff with a transfer for engaging in First Amendment conduct. (Doc. 119, at 45-46.) Plaintiff also mentioned Defendants Vasquez, Pena, Warden Paramo, Secretary Beard, and Captain Larson as contributing to the retaliation in their respective capacities. (<u>Id.</u>) However, this 602 appeal was rejected at this first level of review on April 24, 2015. (<u>Id.</u> at 45.)

Plaintiff submitted the declarations of various inmates who also experienced trouble filing grievances. Inmates Wydell Jones, Lewis Law, Dennis Davis, and Jason Coleman all stated that they did not receive responses to their appeals. (Doc. 119, at 50-51, 58, 63-64, 66-70.) Inmate William Dawes stated that his appeals were not accepted because he would not answer Defendant Buenrostro's questions about other inmates. (Doc. 119, at 55.)

Inmate Juley Gordon stated that Defendant Buenrostro told him that anyone found helping Plaintiff file 602 appeals would be on his hit-list. (Doc. 119, at 83.) Inmate Gerald Marshall declared that Defendant Buenrostro called Plaintiff Roberts a "snitch" and told him the Crips "got off on his ass a couple of months ago on the yard," and told him not to help Plaintiff with his legal papers. (Doc. 119, at 98.) Inmate Curtis Rusher declared that Defendant Buenrostro told him that Plaintiff was arrested for child molestation in the 1980s, offered to provide the documents showing that what he was saying was true, and expressed his desire to see Plaintiff "handled good enough to get him out of here!" (Doc. 119, at 100.) Inmate Keith

14

Williams declared that Defendant Buenrostro told him if he and his "homeboys" put Plaintiff "in the hospital this time," he would bring "anything you want in here." (Doc. 119, at 103.) Inmate Kelvin Singleton declared that in July 2014, inmates who were West Coast Crip members said a correctional officer offered "five hundred dollars" to "fuck up an EOP inmates named Roberts … for snitching on him and some other officers who had come on A yard from the hole." (Doc. 119, at 110-111.) He stated that he heard from other inmates that Roberts was attacked during night yard. (Id.)

IV.   STANDARD OF REVIEW

**A. General Rule**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for the granting of a directed verdict. Judgment must be entered, "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "If reasonable minds could differ," however, judgment should not be entered in favor of the moving party. Id. at 250-51.

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. Liberty Lobby, 477 U.S. at 252. The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrate the absence of a genuine issue of material fact." Celotex v. Catrett, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial. See Celotex, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, could convince a reasonable jury to find for the plaintiff[]." Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000).

While the district court is "not required to comb the record to find some reason to deny a motion for summary judgment," Forsberg v. Pacific N.W. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988), the court may nevertheless exercise its

16

discretion "in appropriate circumstances," to consider materials in the record which are on file but not "specifically referred to." <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001). However, the court need not "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found." <u>Id.</u>

In ruling on a motion for summary judgment, the court need not accept legal conclusions "in the form of factual allegations." <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981). "No valid interest is served by withholding summary judgment on a complaint that wraps nonactionable conduct in a jacket woven of legal conclusions and hyperbole." <u>Vigliotto v. Terry</u>, 873 F.2d 1201, 1203 (9th Cir. 1989).

Morevoover, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." <u>F.T.C. v. Publ'g Clearing House, Inc.</u>, 104 F.3d 1168, 1171 (9th Cir. 1997). Nevertheless, "the district court may not disregard a piece of evidence at the summary stage solely based on its self-serving nature." <u>Nigro v. Sears, Roebuck & Co.</u>, 784 F.3d 495, 497-498 (9th Cir. 2015) (finding plaintiff's "uncorroborated and self-serving declaration sufficient to establish a genuine issue of material fact because the "testimony was based on personal knowledge, legally relevant, and internally consistent.").

17

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). "We have repeatedly held that unauthorized documents cannot be considered in a motion for summary judgment." Id. "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56." Block v. City of Los Angeles, 253 F.3d 410, 418-419 (9th Cir. 2001). "The court need consider only the cited materials, but it may consider other materials in the record." FRCP 56(c)(3). "However, a self-serving declaration does not always create a genuine issue of material fact for summary judgment: The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence." Nigro v. Sears, Roebuck and Co., 784 F.3d 495, 497 (9th Cir. 2015) (citations omitted). "Mere submission of affidavits opposing summary judgment is not enough; the court must consider whether the evidence presented in the affidavits is of sufficient caliber and quantity to support a jury verdict for the nonmovant. A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (citations omitted).

## B. Exhaustion Rule

Section 1997e(a) of the PLRA requires prisoners to exhaust all available administrative remedies before filing a § 1983 action in federal court. <u>See</u> 42 U.S.C. § 1997e(a). Congress enacted the PLRA in part to "allow prison officials a chance to resolve disputes regarding the exercise of their responsibilities before being hailed into court; to reduce the number of prison suits; and to improve the quality of suits that are filed by producing a useful administrative record." <u>Garcia v. Miller</u>, 2015 WL 5794552, at *4 (S.D. Cal. Oct. 2, 2015). With the passage of the PLRA, the exhaustion requirement was strengthened – it is "no longer left to the discretion of the district court, but is mandatory." <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006); <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1857 ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." <u>Brown v. Valoff</u>, 422 F.3d 926, 935 (9th Cir. 2005) (quoting <u>Booth v. Churner</u>, 532 U.S. 731, 739-41 (2001)). "Failure to exhaust is fatal to a prisoner's claim." <u>Bush v. Baca</u>, 2010 WL 4718512, at *3 (C.D. Cal. Sept. 3, 2010). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Woodford</u>, 548 U.S. at 90. "The relevant rules governing exhaustion are not defined by the PLRA, 'but by the prison grievance process itself.'" <u>Ayala v. Fermon</u>, 2017

19

WL 836193, at *5 (S.D. Cal. March 2, 2017) (quoting Jones v. Block, 549 U.S. 199, 219 (2007)).

However, "[a] federal court may nonetheless excuse a prisoner's failure to exhaust if the prisoner takes 'reasonable and appropriate steps' to exhaust administrative remedies but prison officials render administrative relief 'effectively unavailable.'" Ellis v. Navarro, 2011 WL 845902, at *1 (N.D. Cal. March 8, 2011) (citation omitted). The mandatory exhaustion requirement under the PLRA is excused in three circumstances: (1) when an administrative procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use"; and (3) when "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1853-54.

The issue of "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc). In a summary judgment motion for failure to exhaust, the Ninth Circuit instructs that it is defendant's burden to use this evidence to "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. "Once the defendant has carried that

burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1179. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166. "[F]actual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." Id. at 1170-71. "If 'summary judgment is not appropriate,' as to the issue of exhaustion, 'the district judge may decide disputed questions of fact in a preliminary proceeding.'" Hamilton v. Hart, 2016 WL 1090109, at *4 (E.D. Cal. March 21, 2016) (quoting Albino, 474 F.3d at 1168). "[W]hile parties may be expected to simply reiterate their positions as stated in their briefs, 'one of the purposes of an evidentiary hearing is to enable [] the finder of fact to see the witness's physical reactions to the questions, to assess the witness's demeanor, and to hear the tone of the witness's voice.'" Hamilton, 2016 WL 1090109, at *4 (quoting U.S. v. Mejia, 69 F.3d 309, 315 (9th Cir. 1995)). "All of this assists the finder of fact in evaluating the witness' credibility." Hamilton, 2016 WL 1090109,

*4. "It is only in rare instances that credibility may be determined without an evidentiary hearing." Id. (internal citations and quotations omitted).

## V. DISCUSSION

### A. Plaintiff Failed to Properly Exhaust His Administrative Remedies for All Claims Except the Retaliation Claim against Buenrostro.

Defendants have put forth evidence showing that Plaintiff properly submitted only one administrative appeal in 2014 containing any of the allegations in this lawsuit. Plaintiff submitted appeal Log No. RJD-14-1803 on May 19, 2014, contesting the guilty finding made against him on May 1, 2014, concerning a rules violation report authored by Buenrostro on April 2, 2014, which charged Plaintiff with behavior that leads to violence. Plaintiff contended that Buenrostro "falsified" this rules violation report against him for the April 2, 2014 incident, in retaliation for past grievances. Plaintiff argued that he was not guilty of "Openly Displaying Disrespect" toward Buenrostro, which was the finding of the Senior Hearing Officer. (Decl. B. Self, Exhibit A.) Plaintiff's contentions were rejected, and his disciplinary appeal was denied at both the second and third levels of review. Id.

Based on this administrative appeal, and Plaintiff's contentions within it, Plaintiff exhausted his administrative remedies concerning his claim that Buenrostro retaliated against him by authoring a false rules violation report on April 2, 2014. However, this is the only claim that Plaintiff exhausted. In the

appeal, Plaintiff did not allege that Buenrostro improperly searched Plaintiff that day or that Buenrostro intentionally touched Plaintiff's private parts for his sexual gratification. Plaintiff made no other claims against any other Defendant in the appeal. Plaintiff tried to add new allegations and name new prison officials in Section F of a subsequent appeal, including Captain Sanchez and Associate Warden Siebel, after appeal RJD-14-1803 was reviewed at the second level. But California regulations are clear that "administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by appellant that was not included in the originally submitted CDCR Form 602." Cal. Code Regs. Tit. 15, § 3084.1(b) (emphasis added). This is why the Office of Appeals specifically refused to address those new issues in the third level response. (See Exhibit A to Decl. B. Self, third-level response, second paragraph under III, "Third Level Decision," A, "Findings.")

The only other administrative appeal Plaintiff properly submitted in 2014 was Log No. RJD-14-1209, which challenged the cancellation of a previous appeal, Log No. RJD-14-1117. RJD-14-1117 concerned funds taken from Plaintiff's trust account. (Decl. B Self, ¶¶ 12-13.) Plaintiff submitted seven other administrative appeals in 2014, which were screened out or cancelled for various reasons. (Decl. B. Self, ¶ 14.) Evidence from the Office of Appeals shows that the only administrative appeal Plaintiff advanced to the third-level of review in 2014 was Log No. RJD-14-1803. (Decl. M. Voong ¶ 9.)

Plaintiff did not properly submit any other administrative appeal naming Buenrostro or any other Defendant in 2014. (Decl. B. Self, ¶ 12.)

**B. Defendants are entitled to summary judgment as to Plaintiff's Exhausted Retaliation Claim Against Buenrostro.**

The fundamentals of a retaliation claim are easily summarized. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000). It is the plaintiff's burden to prove each of those elements, including the lack of any legitimate correctional goal for the challenged action. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Courts should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory. Pratt, 65 F.3d at 807. A plaintiff must prove that the alleged retaliatory motive was the but-for cause of the challenged actions. Hartman v. Moore, 547 U.S. 250, 260 (2006).

Here, Plaintiff has failed to provide evidence that the alleged retaliatory motive – to chill Plaintiff's First Amendment rights to file grievances – was the but-for cause of Defendant Buenrostro's report stating that Plaintiff openly displayed

24

disrespect against him by calling him a "stupid Mexican." It is a legitimate penological goal to ensure that prisoners respect the correctional officers and that internal order and discipline are maintained. <u>Procunier v. Martinez</u>, 416 U.S. 396, 412-413 (1972). Courts must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995) (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 482 (1995)). The evidence shows that there was a legitimate reason for the issuance of the rules violation against Plaintiff, and Plaintiff has not provided any reason to doubt the truth of the prison's finding him guilty of disrespectful behavior. Thus, Plaintiff's claim that Defendant Buenrostro "falsified" a rules violation report against him for the April 2, 2014 incident, in retaliation for past grievances, should be dismissed on summary judgment.

**C. Plaintiff is Entitled to an Evidentiary Hearing to Determine whether He Effectively Exhausted His Remedies For His Remaining Claims.**

Although Defendants have shown that Plaintiff failed to exhaust all but one of his claims, Plaintiff has come forward "with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." <u>Albino</u>, 747 F.3d at 1172. On April 2, 2014, Plaintiff declared that he placed a CDCR Inmate Appeal 602 dated April 2, 2014 in Housing Unit #1 Appeals box, alleging sexual assault by

25

Correctional Officer A. Buenrostro. (Roberts Decl., Doc. 119, at 26.) Plaintiff

declared that he never received a response from any prison official regarding the

appeal. (Id.) On June 23, 2014, Plaintiff stated that he placed a CDCR 602 Appeal

dated June 19, 2014 concerning senior CDCR administrators' intentional failure to

control Officers D. Arguilez, A. Buenrostro, and R. Davis. (Doc. 119, at 27.)

Plaintiff declared that he never received a response addressing the appeal. (Id.) On

July 8, 2014, Plaintiff gave Officer L. Ciborowski an Appeal dated June 28, 2014,

alleging an ongoing conspiracy to retaliate against him. (Id.) Plaintiff also

submitted a CDCR Form 22 Inmate Request for Interview to Officer Ciborowski,

who accepted it and signed it. (Id.) However, Plaintiff never received a response to

the appeal. (Id.) Plaintiff stated that the administrative appeal submitted to Sergeant

Ciborowski on July 8, 2014 included sufficient detail to provide enough

information to allow prison officials to take appropriate responsive measures. (Doc.

119, at 15.)  Finally, Plaintiff submitted a 602 appeal on April 2, 2015 documenting

that Defendant Buenrostro threatened Plaintiff with a transfer for engaging in First

Amendment conduct. (Doc. 119, at 45-46.) Plaintiff also mentioned Defendants

Vasquez, Pena, Warden Paramo, Secretary Beard, and Captain Larson as

contributing to the retaliation in their respective capacities. (Id.) However, this 602

appeal was rejected at this first level of review on April 24, 2015. (Id. at 45.)

Plaintiff declared that it has been his personal experience that RJ Donovan

fails to operate an Inmate Appeal system that conforms to state law and places

unreasonable restrictions on inmates' ability to submit 602 appeals. (Roberts Decl. ¶ 16; Doc. 119, at 31.) Plaintiff stated that he believes that his appeals either vanished or were unlawfully rejected. (Roberts Decl. ¶ 17, 23; Doc. 119, at 31-33.) Plaintiff also submitted the declarations of various inmates who also experienced trouble filing grievances. Inmates Wydell Jones, Lewis Law, Dennis Davis, and Jason Coleman all stated that they did not receive responses to their appeals. (Doc. 119, at 50-51, 58, 63-64, 66-70.) Inmate William Dawes stated that his appeals were not accepted because he would not answer Defendant Buenrostro's questions about other inmates. (Doc. 119, at 55.)

Because the material facts are disputed as to whether the prison thwarted Plaintiff's ability to file his administrative appeals, summary judgment should be denied at this time and the district judge should hold an evidentiary hearing to decide the disputed factual questions surrounding exhaustion.

VI. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Hayes under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **June 13, 2018**. The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the

27

1  specified time may waive the right to raise those objections on appeal of the Court's

2  Order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst,

3

4  951 F.2d 1153, 1157 (9th Cir. 1991).

5        **IT IS SO ORDERED**.

6  DATE: May 25, 2018

7

8

9

10

11                                      Peter C. Lewis
                                        United States Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28